UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARVIN WALLACE                              CIVIL ACTION

VERSUS                                      NUMBER: 08-1438

N. BURL CAIN                                SECTION: "A"(5)

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the amended writ of habeas corpus filed by petitioner, Marvin Wallace, along with the State's response to the amended petition, and Wallace's traverse/objection to the State's response.  (Rec. docs. 29, 42, 45).  Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that Wallace's petition be dismissed with prejudice.

## I.   PROCEDURAL BACKGROUND[1]

Petitioner Wallace is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola,

_____

[1]The portion of the procedural history pre-dating Wallace's application for state post-conviction relief was taken from this Court's January 9, 2009 Report and Recommendation.  (Rec. doc. 16).

Louisiana.   On October 28, 1999, Wallace was found guilty of forcible rape after trial, by jury, in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.   On November 19, 1999, Wallace was sentenced to thirty-five years at hard labor without benefit of parole, probation, or suspension of sentence for the first two years.   The State then filed a bill of information accusing Wallace of being a fourth felony offender and asking that he be sentenced as such under LSA-R.S. 15:529.1. Following a hearing on that matter, Wallace was adjudicated a third felony offender, whereupon his thirty-five year sentence was vacated and he was resentenced to life imprisonment without benefit of parole, probation, or suspension of sentence.

On appeal, Wallace raised the following claims:

1) there was insufficient evidence to support his conviction;

2) there was insufficient evidence to support his multiple offender adjudication;

3) the trial court erred when it refused to allow testimony regarding the victim having made allegations of sexual assault against another person.[2]

Wallace's conviction was affirmed on direct appeal to the Louisiana Fifth Circuit Court of Appeal but the case was remanded

---

[2] The above-enumerated claims are based upon this Court's review of the appeal brief (st. rec., vol. 7) which was filed on Wallace's behalf by counsel.  Wallace filed a pro se supplemental brief (st. rec., vol. 7) which set forth the same claims.

to the trial court with instructions to advise him of the prescriptive period for seeking post-conviction relief and of the sex offender notification requirements. <u>State v. Wallace</u>, 788 So.2d 578 (La. App. 5th Cir. 2001). Writs were denied by the Louisiana Supreme Court on May 24, 2002. <u>State v. Wallace</u>, 816 So.2d 297 (La. 2002).

On May 5, 2003, Wallace filed an application for post-conviction relief (st. rec., vol. 2, tab 4).[3] In his application, Wallace raised the following claims:

    1) prosecution unconstitutionally suppressed exculpatory and impeachment evidence;

    2) trial counsel was ineffective for failing to "use" exculpatory and impeachment evidence;

    3) he was entitled to DNA testing;

    4) ineffective assistance of trial and appellate counsel;

    5) introduction of "other crimes" evidence warranted mistrial.

On May 14, 2003, the state district court issued an Order (st. rec., vol. 2, tab 5) denying Wallace's claim of ineffective assistance of trial and appellate counsel as set forth in item 4 above. With regard to the remaining issues, the court deferred a decision until the State filed a response.

_____

[3]May 5, 2003 represents the date Wallace signed his post-conviction application.

On March 11, 2004, the state district court issued an Order (st. rec., vol. 2, tab 8) denying Wallace's claims that the State suppressed exculpatory and impeachment evidence, that trial counsel was ineffective in failing to "use" exculpatory and impeachment evidence, and that he was entitled to a mistrial based upon the unconstitutional admission of "other crimes" evidence. The state district court did not address Wallace's claim that he was entitled to DNA testing.

Wallace next filed a writ application (st. rec., supp. vol. 10, tab 64) with the Louisiana Fifth Circuit Court of Appeal seeking relief from the district court's March 11, 2004 Order. On November 30, 2006, the state appellate court denied Wallace's writ application, finding "no error in the trial court's ruling of March 11, 2004." State ex rel. Wallace v. Cain, No. 2006-KH-0896 (La. App. 5 Cir. 2006) (unpublished opinion) (st. rec., vol. 3). Similarly, on February 22, 2008, the Louisiana Supreme Court denied Wallace's writ application challenging the denial of the above claims. State ex rel. Wallace v. State, 976 So.2d 1277 (La. 2008).

On March 26, 2008, Wallace filed the instant action. On August 18, 2008, Wallace filed a motion to stay (rec. doc. 11) in order to exhaust his state court remedies with respect to his DNA-related claim. On January 9, 2009, the undersigned issued a Report and Recommendation noting that even though Wallace had presented

4

his DNA-related claim to the state courts, the courts had failed to rule on the matter.   (Rec. doc. 16).   As such, the Court recommended that Wallace's motion to stay be granted to allow Wallace to exhaust his state court remedies with respect to his DNA claim.   On February 4, 2009, the district court ordered that Wallace's motion to stay be granted.   The district court further ordered that Wallace be allowed, within 30 days after exhaustion, "to file a motion to reopen these proceedings, along with an amended habeas corpus petition...."   (Rec. doc. 17).

On October 10, 2008, while his federal habeas petition was pending, the Louisiana Supreme Court, pursuant to the "Cordero process",[4] transferred Wallace's post-conviction writ application (No. 2006-KH-0896) to the Louisiana Fifth Circuit Court of Appeal for reconsideration.   See State ex rel. Wallace v. State, 994 So.2d 23 (La. 2008).   Thereafter, Wallace filed a second writ application, 2009-KH-0607, with the state appellate court,

---

[4]The "Cordero process" was promulgated by the Louisiana Supreme Court which, pursuant to the Louisiana Fifth Circuit's en banc resolution of September 9, 2008, transferred designated writ applications back to the state appellate court for reconsideration. See State v. Cordero, 993 So.2d 203 (2008).   The process, in the instant case, was initiated by a writ application filed by Wallace under docket number 2008-KH-1789.   (St. rec., supp. vol 11, tab 73).   Wallace's writ application, on reconsideration by the Louisiana Fifth Circuit, was assigned Civil Action No. 2008-WR-1080.

reiterating his request for DNA testing and arguing that his rights, as set forth in Batson v. Kentucky, 476 U.S. 79 (1986), were violated by virtue of the State's challenge to an African-American voir dire member.[5]

The Louisiana Fifth Circuit consolidated Wallace's two writ applications, No. 2008-WR-1080 and No. 2009-KH-0607.  On May 28, 2010, the state appellate court issued an opinion denying all but two of Wallace's claims on the merits.

With regard to Wallace's Batson claim, the appellate court noted that the district court determined said claim "was procedurally barred by LSA-C.Cr.P. art. 930.8 and LSA-C.Cr.P. art. 930.4(C)."[6]  State ex rel. Wallace v. State, No. 2008-WR-1080 c/w 2009-KH-0607 (La. App. 5 Cir. 2010) (unpublished opinion) (attached hereto).  The Louisiana Fifth Circuit found no error with the

_____

[5]In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court pronounced that purposeful discrimination in the jury selection process was unconstitutional.

[6]Article 930.8 provides, in pertinent part:
   No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final....

Article 930.4(C) provides:
   If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

district court's decision in this regard.

With respect to Wallace's DNA-related claim, the Louisiana Fifth Circuit, after reviewing the tortuous procedural history associated with Wallace's request for DNA testing, determined that it "is unclear whether the testing was even conducted." Accordingly, the court transferred the issue to the state district court for its review. Id.

In connection with the state appellate court's transfer, the district court, on July 8, 2010, issued a "Per Curiam Regarding DNA Testing", providing:

> The Louisiana Fifth Circuit Court of Appeal recently remanded the referenced matter to this Court to determine the status of the May 9, 2003 application for DNA testing filed by the defendant. Pursuant to La.C.Cr.P. art. 926.1, *et seq*, this Court conduced [sic] a hearing on June 24, 2004, and ordered the State to make a sample taken from the back of the victim available to the defendant for DNA testing. The State indicated that it intended to seek review of the ruling, but never filed an application. The parties then indicated that they could not agree upon an entity to test the sample. Therefore, on January 5, 2006, the Court ordered the State to send the sample to Reliagene for DNA testing. In late 2006, the defendant filed a motion indicating that the State had failed to send the sample for testing. Therefore, on December 14, 2006, the Court again ordered the State to send the sample to Reliagene for DNA testing.
> In 2008, the State informed the Court for the first time that it could not locate the sample at issue. The Court ordered the State to conduct a thorough search and to determine exactly what had happened to the sample. At the hearing held on October 7, 2008, evidence revealed that the sample taken from the victim's back was contained within one of two rape kits collected as evidence. The Director of the Jefferson Parish Crime

Laboratory, Milton Dureau, Jr., testified that his agency
had possession of these rape kits, as well as swatches
from a bedspread taken from the crime scene. At the end
of the hearing, this Court not only ordered DNA testing
of the sample taken from the victim's back, but also
ordered DNA testing of the swatches from the bedspreads
and all other items contained in the rape kits. The
parties agreed that the Jefferson Parish Crime Laboratory
would conduct the testing.

At a status hearing held on January 12, 2009, the
State indicated that the DNA testing had been completed
and that the State would provide defense counsel with the
reports regarding the testing. The defendant has never
informed the Court that he failed to receive these DNA
reports. Furthermore, at the January 12, 2009 hearing,
the defendant indicated he had received information
regarding two Jefferson Parish crime laboratory workers
who conducted testing on certain evidence in 1999.
Therefore, the defendant subpoenaed these individuals and
on February 10, 2009, they provided testimony regarding
the testing that they conducted in 1999.

Based upon the foregoing, it appears that all issues
relating to the DNA testing requested by the defendant
have been resolved.

(St. rec., supp. vol. 6, tab 45).[7]

On November 19, 2010, Wallace filed a writ application

(No. 2010-KH-1034) with the Louisiana Fifth Circuit seeking relief

in connection with the district court's July 8, 2010 Order. On

January 10, 2011, the state appellate court denied Wallace's writ

---

[7]To ensure that Wallace had a copy of the DNA test results,
the district court, on October 13, 2010, ordered that the Clerk of
Court provide Wallace with a copy of the DNA test results. (St.
rec., supp. vol. 7, tab 14). As evidenced by the January 14, 2009
report, attached to the district court's October 13, 2010 Order,
the DNA testing was inconclusive in that none of the samples tested
provided evidence regarding the identity of the perpetrator.

application, providing:

> In his writ application, relator claims that the district court abused its discretion and erred by accepting the DNA test results in its July 8, 2010 order. According to relator, he is unable to perform any independent DNA testing due to destruction of all the evidence, in violation of LSA-C.Cr.P. art. 926.1(H).
>
> The district court order of July 8, 2010, holds that all issues related to testing of DNA evidence requested by relator have been resolved. Relator has not included in his submission to this court a copy of any pleading filed or ruled on by the district court in which he has challenged the DNA test results or complained of his inability to do independent testing. Relator must first raise these claims by filing a pleading with the district court in order to obtain a ruling on these issues before seeking review in this Court. Without a ruling from the district court on the issues raised by relator in the instant application, there is nothing for this Court to review. Accordingly, this writ application is denied.

Wallace v. Cain, No. 2010-KH-1034 (La. App. 5 Cir. 2011) (unpublished opinion) (attached hereto).

Rather than raising the above delineated issues with the district court, Wallace filed a supplemental brief (st. rec., supp. vol. 12, tab 75) with the Louisiana Supreme Court in his pending writ application (2010-KH-1554). On September 16, 2011, the Louisiana Supreme Court, without opinion, denied Wallace's writ application. State ex rel. Wallace v. State, No. 2010-KH-1554, 69 So.3d 1137 (La. 2011).

On October 7, 2011, Wallace filed a motion to reopen the above-captioned matter and to file an amended writ application. (Rec. doc. 29). On October 26, 2011, Wallace's motion was granted.

9

(Rec. doc. 30).

In his amended habeas petition, Wallace raises the following claims:

A) prosecution suppressed favorable evidence;

B) counsel was ineffective in failing to "use" favorable evidence;

C) ineffective assistance of trial and appellate counsel;

D) whether his constitutional rights were violated due to destruction of evidence;

E) whether his supplemental Batson claim, based upon the State's successful challenge to an African-American voir dire member, was timely;

F) whether his constitutional right to present a defense and testify in his own behalf was violated;

G) insufficient evidence to support conviction;

In its response (rec. doc. 42), the State concedes that the instant action is timely, but asserts "certain claims are unexhausted and/or procedurally defaulted, and others fail to present a federal question for review." (Doc. 42, p. 5). Before engaging in its analysis, this Court shall review the applicable facts and standard of review.

## II.  FACTS[8]

On February 20, 1999 J.L., a 16-year-old boy, had a fight

---

[8] The facts are taken from the Louisiana Fifth Circuit Court of Appeal's opinion, State v. Wallace, 788 So.2d 578 (La. App. 5 Cir. 2001).

with his mother because she refused to let him go to a party. J.L. had been suspended from school and his mother had grounded him for the suspension at the time of this fight.   J.L. had been disciplined by the school on several occasions; each time, he had received punishment at home.   He became angry with his mother on February 20, 1999 and left home.   J.L. had run away from home twice before, but had returned in a day.   This time, J.L. was away from home from February 20 to February 25, 1999.   After he was missing for a day, his mother notified the police.

On the first night away from home, J.L. stayed at the home of a friend's aunt.   On the second night, he stayed with a second friend.   Thereafter, J.L. called a female friend, C., and told her that he had been put out of the house because his mother was angry about his suspension from school.   C.'s mother, Miriam Midence, put J.L. in a Days' Inn motel located on Veterans Highway. She paid for seven nights and gave the boy money for food.   The boy called Midence each day.   On the second day at the motel, Midence drove the boy to McDonald's to buy food.   On the third day, she bought him chicken.   Each day she would urge the boy to call his parents. Midence told J.L. not to go out of the motel because it was dangerous.

On February 24, 1999, after talking on the phone and

11

watching television, J.L. went to the E-Z Serve gas station and
convenience store across from the motel to get something to eat.
He met Marvin Wallace near the store and Wallace asked him if he
was "Josh." J.L. replied that Josh is his brother. J.L. asked
Wallace to buy him a beer. At the E-Z Serve, where Wallace had
previously worked, Wallace purchased two beers and gave one to J.L.
Wallace spoke with Tanya Thomas, a former co-worker at the E-Z
Serve. J.L. and Wallace got in Wallace's car, Wallace gave the boy
the beer, and Wallace then drove J.L. to Wallace's house at 124
Diane Street in St. Rose, Louisiana.

J.L. and Wallace went inside and Wallace showed J.L.
around. Two of Wallace's friends arrived and Wallace lifted weights
with them. They remained at Wallace's house for 30-45 minutes.
Wallace poured a cup of liquor, which he shared with J.L. Wallace
borrowed a friend's vehicle to take J.L. to the motel.

On the way to the motel, Wallace stopped at his mother's
house for about 20 minutes. Wallace got out at the house and J.L.
stayed in the car. The pair then proceeded to the E-Z Serve, where
Wallace bought a bottle of rum. At some time during the evening,
J.L. had shown Wallace his pocketknife.

When the pair arrived at the motel, J.L. said that he was
going inside. Wallace told him he was going to smoke some

12

marijuana and then leave.  However, Wallace followed J.L. into the motel room and told the boy to sit on the bed.  Wallace gave the boy rum and marijuana.  J.L. felt disoriented and went to the bathroom to vomit.  J.L. lay across the bed.  Wallace sat on the bed and, after drinking and smoking, he lay next to J.L.  Wallace then lay on top of J.L., grabbed him by his throat, and removed J.L.'s pants.  Screaming and pleading for his life, the boy slid down to the floor; Wallace put him back on the bed and held a pocketknife to his throat.

Wallace raped J.L. anally, then sat on his throat and ordered J.L. to perform oral sex.  Wallace was wearing a condom at the time of this incident.  J.L. went to the bathroom again and vomited once more.  Wallace then placed him on the bed and again raped the boy anally.  J.L. then vomited in the bed.  Thereafter Wallace dressed and left the motel.  According to J.L., he feared for his life and felt that his assailant would have killed him if he had not submitted to the rape.

Between 1:00 a.m. and 2:00 a.m. on the morning of February 25, 1999, J.L. called his girlfriend and told her that he had been raped.  He was upset, crying, and asked her not to tell anyone.  His girlfriend was afraid that J.L. would hurt himself, so she told J.L.'s mother's best friend, Madalena, of the incident.

At approximately 9:00 a.m. that day, J.L. called Miriam Midence and asked her to drive him to his Aunt Madalena's house. Midence picked up J.L. and drove him as he requested. When J.L. arrived at his aunt's house she was crying, so he knew she was aware of the rape. Madalena called J.L.'s mother and told her to come over because her son had been raped. When J.L.'s mother arrived, J.L. was crying and shaking and he wanted to kill himself. His mother told the boy that the incident needed to be reported to the police. J.L. was afraid because his assailant had threatened to kill the boy's family if they reported the incident to the police.

At approximately 12:07 p.m. on February 25, 1999, the victim, his mother and stepfather went to the Criminal Investigation Division of the Kenner Police Department. Kenner Police Detective Chad Jacquet met them. He took the rape report. The victim told the police that someone named "Marvin" raped him. The victim provided a description of his assailant that included height, weight and identifying factors, such as his gold tooth and a tattoo on his chest that read "Thelma". A photo lineup was presented that contained a photograph of Marvin Wallace; the victim selected this photograph from the lineup as being the person who had raped him.

14

J.L. was transported to Children's Hospital and was examined by Dr. Scott Benton, a clinical pediatric forensic specialist. The boy was found to have some evidence of trauma, possible trace evidence of seminal fluid on his mid-upper back, and a linear abrasion of the right shoulder. There were no tears or abrasions of the anus. No other physical evidence of assault was found. Dr. Benton noted that it is not unusual not to find anal tearing, as the sphincter is designed to open and dilate. He further explained that seminal fluid would not be found if a condom were used and oral sex would not produce physical findings.

Detective Michael Cunningham of the Kenner Police Department was dispatched to the motel room J.L. had formerly occupied. He found the room had been partially cleaned. No condoms were found, nor was a knife recovered. The room was processed for fingerprints, but none were found. The bedspread, blanket and mattress pad were retrieved, but the test results were inconclusive.

J.L. was transported to Wallace's street in St. Rose and was able to identify Wallace's house. Police executed a search warrant on the defendant's house and seized condoms and green vegetable matter. A search of Wallace's mother's house produced no evidence.

15

According to Tanya Thomas, she received a call from Wallace about a week after this incident.  He told her that he knew the boy and his father and that the boy was in trouble.  Wallace asked Thomas if anyone had been there at the E-Z Serve asking questions about him.  He instructed Thomas to deny seeing him with the youth.

Marvin Wallace testified on his own behalf as follows: He denied raping or sexually assaulting J.L.  He testified that on February 24, 1999, at approximately 4:00 p.m. he picked up his fiancée from work and they drove to their home in St. Rose. Wallace said he stayed home until between 7:30 p.m. and 8:00 p.m., when he left for his mother's house.  Wallace got out of the car to make a phone call and then left for the E-Z Serve.

Wallace said he met J.L. at the E-Z Serve and bought him a beer.  Wallace gave the boy a ride to the home of Wallace's mother.  Wallace again got out at his mother's house to make a phone call.  From here Wallace and the boy proceeded to the home of Wallace's cousin.  The trio then went to the park.  Thereafter, Wallace dropped off his cousin and proceeded home with J.L.

While they were at Wallace's house, a cousin of Wallace's fiancée arrived and the men went to the weight room in the house to work out.  Wallace borrowed the cousin's car to transport J.L. back

to the E-Z Serve.  Wallace went into the E-Z Serve to get a bottle
of rum to make drinks for himself and his fiancée.  Wallace drove
from there to his mother's house and then went home.  According to
Wallace, he last saw J.L. at the E-Z Serve.  He felt the boy had
serious problems and needed counseling.

Danette Jones, Wallace's fiancée, testified that the
couple was together for the greater part of the night.  According
to Jones, on February 25, 1999 Wallace was away from the house
between 8:30 p.m. and 12:30 a.m. because he was at his mother's house.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA") comprehensively overhauled federal habeas corpus
legislation, including 28 U.S.C. §2254.  Amended subsections
2254(d)(1) and (2) contain revised standards of review for
questions of fact, questions of law, and mixed questions of law and
fact.  Provided that the state court adjudicated the claim on the
merits, pure questions of law and mixed questions of law and fact
are reviewed under §2254(d)(1) and questions of fact are reviewed
under §2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir.
2000).

As to questions of law and mixed questions of law and
fact, a federal court must defer to the state court's decision
unless it "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).   The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

## IV. ANALYSIS

### A. Suppression of Evidence

In Brady v. Maryland, 373 U.S. 83, 87-88 (1963), the United States Supreme Court held that "the suppression of evidence

18

favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." That rule has been expanded to include evidence which impeaches the testimony of a witness, where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 153-55 (1972). Evidence is material if there is a "'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985). However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome, does not establish "materiality" in the constitutional sense. U.S. v. Agurs, 427 U.S. 97, 109-110 (1976).

Wallace claims that the State unlawfully withheld the initial statement provided by the victim, J.L., which contradicted his trial testimony. Wallace provides that J.L., in his initial statement and at trial, informed that he was in possession of a small pocket knife on the night at issue. However, in his statement, J.L. informed that Wallace took the knife from him when they went to Wallace's home to lift weights and later used the knife to force J.L. to drink liquor and have sex. (Rec. doc. 29,

19

p, 6). At trial, J.L. testified that he was in possession of the knife when he and Wallace entered his hotel room. He later put the knife on the hotel room dresser and Wallace got the knife and used it to force himself on J.L. (Rec. doc. 29, pp. 8-9).

Wallace also complains that the State unlawfully suppressed the taped statement provided by witness, Tanya Thomas, Wallace's former co-worker at the E-Z convenience store where Wallace bought a beer for the victim. Wallace contends that the statement was exculpatory because Thomas indicated that the victim initiated contact with Wallace. (Rec. doc. 29, pp. 10-11).

In addressing this issue on post-conviction, the state district court provided:

> Turning to defendant's first claim of error, he argues that the State suppressed favorable evidence relative to the statements of the victim, J.L., and witness, Tanya Thomas. Defendant further argues that the suppression of said evidence denied him the right to a fair trial. In support of this claim, defendant contends that the State suppressed J.L.'s statement. The defendant avers that the State suppressed information regarding discrepancy as to whether the knife was returned to the victim or was placed on the dresser before defendant used it to threaten the victim. The State argues that no breach of duty occurs unless the omission is significant enough to deny defendant's right to a fair trial. The State further avers that it disclosed information regarding the statement of J.L. on July 23, 1999. The State also argues that defendant was in possession of information regarding the statement at the time of trial. Upon review, this Court finds that information pertaining to statements regarding the knife were known to the defendant at the time of trial. Further, this Court finds that even if the information

20

was suppressed by the state, the alleged suppression was not significant enough to deny defendant a fair trial. Thus, this claim is denied.

The defendant also alleges that the State suppressed the statement of Tanya Thomas.  Defendant avers that had it been produced, Ms. Thomas' statement would have discredited the prosecution's contention that Petitioner initiated the contact with the victim at the E-Z Serve. The State argues that the defendant has failed to demonstrate that the information was exculpatory or was material to guilt or punishment pursuant to State v. Rosiere, 488 So.2d 965, 970 (La. 1986).  Upon review, of defendant's claim, State's response, and defendant's answer to State's response, this Court finds that defendant has not met his burden in proving this claim and therefore, is not entitled to the relief sought.

(St. rec., vol.2, tab 8).

Finding that the district court did not err in denying Wallace post-conviction relief, the Louisiana Fifth Circuit Court of Appeal, on November 30, 2006, denied Wallace relief.  State ex rel. Wallace v. Cain, No. 2006-KH-0896 (La. App. 5 Cir. 2006) (unpublished opinion) (St. rec., vol. 3).  On February 22, 2008, the Louisiana Supreme Court likewise denied post-conviction relief. State ex rel. Wallace v. State, 976 So.2d 1277 (La. 2008).

Thereafter, re-reviewing the issue pursuant to Cordero, supra, the Louisiana Fifth Circuit Court of Appeal reasoned:

First, relator argued that the state's failure to disclose the victim's statement deprived the defense of impeachment material in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). According to relator, the victim's statement reveals a discrepancy in the victim's testimony regarding how and when relator took possession of the victim's knife which

21

he then used to threaten the victim.  Specifically, in
the victim's statement, he indicated that relator took
the knife from the victim's pocket before they arrived at
the victim's motel room.   However, when the victim
testified at trial, he stated that relator must have
taken the knife from the top of the dresser in his motel
room.

Although the court minutes reveal that the defense
received open file discovery, it remains unclear whether
the state turned over the victim's statement to the
defense.   Even assuming that the state withheld the
victim's statement, the inconsistency to which relator
points pertains only to the timing of when relator gained
access to the knife.  The victim consistently stated that
relator threatened him with his knife.   While relator
argues that this conflict in the victim's statement and
testimony would have diminished the victim's credibility,
the defense had challenged the victim's trustworthiness
by pointing out that he was a 16-year-old runaway who had
been suspended from school on several occasions.   In
addition, relator, who testified at trial, denied ever
entering the victim's motel room.  Against this backdrop
the suppressed statement does not rise to a level of
materiality warranting reversal under <u>Brady</u>.

As part of his <u>Brady</u> claim, relator maintains that
the state also failed to disclose the statement from
Tanya Thomas, an employee at the E-Z serve convenience
store where relator met the victim.   In relator's view,
Thomas' statement would have discredited the state's
argument that relator initiated the contact with the
victim. Specifically, in her statement, Thomas indicated
that while she was talking to relator, the victim joined
in their conversation.   Thus, relator contends that this
information would have rebutted the state's suggestion
that relator was a child predator.   On the other hand,
Thomas also testified that shortly after the instant
offense occurred, relator instructed her to deny seeing
him with the victim.   Furthermore, relator admitted at
trial that he purchased beer for the 16-year-old victim
and then drove him to his house to lift weights.   Thus,
despite the claim he makes for it, the suppressed
statement does little to undercut the state's case or
bolster the defense.   Therefore, relator's <u>Brady</u> claim
fails.

22

State ex rel. Wallace v. State, 2008-WR-1080 c/w 2009-KH-0607 (La.
App. 5 Cir. 2010) (unpublished opinion) (attached hereto).

This Court finds that the above-reasoning on the part of
the Louisiana Fifth Circuit does not represent an unreasonable
application of Brady to the facts of this case.   It is not
reasonably probable that had the evidence at issue been disclosed,
the result of the proceeding would have been different.

**B. Counsel Was Ineffective in Failing to "Use" Favorable
Evidence**

The seminal Supreme Court decision regarding ineffective
assistance of counsel is Strickland v. Washington, 466 U.S. 668,
697 (1984), wherein the Court held that in order to prove that
counsel was ineffective, petitioner must demonstrate that counsel's
performance was deficient and that the deficient performance
prejudiced the defense.   If a court finds that petitioner has made
an insufficient showing as to either one of the two prongs of
inquiry, it may dispose of the claim without addressing the other
prong.

Under the deficient performance prong of the Strickland
test, "it is necessary to 'judge . . . counsel's challenged conduct
on the facts of the particular case, viewed as of the time of
counsel's conduct.'"   Lockhart v. Fretwell, 506 U.S. 364, 371
(1993), citing Strickland, 466 U.S. at 690.   To prove prejudice

under the <u>Strickland</u> standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

Wallace argues that if the statements of J.L. and Tanya Thomas were not suppressed, then counsel was ineffective in failing to use these statements in his defense. (Rec. doc. 29, p. 20). However, assuming *arguendo* that counsel was deficient in failing to introduce the statements, Wallace clearly was not prejudiced by this deficiency.

J.L.'s statement only deviated from his trial testimony with respect to when Wallace took possession of the knife that Wallace used to force J.L.'s submission. There was no discrepancy in J.L.'s statement and his testimony with respect to the salient point, that Wallace pulled a knife to compel J.L.'s compliance.

Similarly, Wallace was not prejudiced by counsel's failure to introduce Tanya Thomas' statement that J.L. joined the conversation she was having with Wallace, as opposed to Wallace bringing J.L. into the conversation. As the Louisiana Fifth Circuit noted, there was ample evidence reflecting that Wallace pursued J.L. Wallace testified that he bought the teenager a beer, then drove J.L. to his house. Further, if Thomas's statement regarding who started the initial contact between Wallace and J.L.

24

had been introduced, it would have been severely undercut by
Thomas' trial testimony that Wallace instructed her to deny seeing
him with the victim.  See supra at p. 22.  Thus, Wallace has failed
to satisfy Strickland's two-prong test.

### C. Ineffective Assistance of Trial and Appellate Counsel[9]

#### 1) Trial counsel's failure to question defense witness Cedric Jones regarding home weight-lifting

In his testimony the victim, J.L., stated that he saw a
tattoo on Wallace's chest at the hotel room during the perpetration
of the forcible rape.  (Rec. doc. 1, p. 22).  According to Wallace,
Cedric Jones would have testified that J.L. saw Wallace's tattoo
earlier, at Wallace's house, when Wallace took of his shirt to lift
weights.  (Rec. doc. 1, p. 22).  Wallace contends that Jones'
testimony was crucial since, the fact that J.L. knew of Wallace's
chest tattoo, did not necessarily place Wallace in the hotel where
the crime occurred.

In addressing this issue, the state district found
counsel's failure to question Jones in this regard attributable to
trial strategy rather than ineffectiveness on the part of counsel.

---

[9] Strickland's two-part test is applicable with respect to a
claim that appellate counsel, as well as trial counsel, was
unconstitutionally ineffective.  See Busby v. Dretke, 359 F.3d 708,
714 (5th Cir.), cert. denied, 541 U.S. 1087, 124 S.Ct. 2812, 159
L.Ed.2d 249 (2004) (citations omitted) ("The familiar Strickland
framework applies to a prisoner's claim that his appellate counsel
was ineffective for failing to raise a certain issue on appeal.").

"The defendant's claims are essentially with his counsel's decisions regarding witnesses and strategic decisions made during trial.... [A]n attorney's decisions as to trial tactics do not rise to the level of ineffective assistance of counsel." (St. rec., vol. 2, tab 5, p. 2).

The state appellate court also rejected the instant claim, reasoning: "[C]ounsel's choices of which questions to ask on cross-examination fall well within the ambit of trial strategy.... [T]he decision to call or not to call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective assistance of counsel." State ex rel. Wallace v. State, No. 2008-WR-1080 c/w 2009-KH-0607 (La. App. 5 Cir. 2008) (unpublished opinion) (attached hereto).

The Fifth Circuit, in discussing "Trial Strategy Justification", provided:

> Continuing with the deficient performance analysis, we next evaluate whether trial counsel's failure to challenge the juror was justified by trial strategy. Under Strickland, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed.83 (1955)). A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.

Seigfried v. Greer. 372 Fed. Appx. 536 (5th Cir. 2010) (quotation

omitted).

This Court finds that the state courts' rejection of Wallace's ineffectiveness claim, based upon the finding that counsel's failure to question Jones was part of counsel's strategy, did not constitute an unreasonable application of <u>Strickland</u> to the facts of this case.

> **2) Trial counsel's failure to appear during a critical stage of the proceedings and appellate counsel's failure to raise <u>Batson</u> claim**

Wallace argues that trial counsel was ineffective due to his failure to appear during a critical stage of the proceedings. (Rec. doc. 1, p. 21). Wallace also argues that appellate counsel was ineffective due to counsel's failure to raise his <u>Batson</u> claim on appeal. (Rec. doc. 1, p. 26).

A review of Wallace's state court proceedings, as set forth above, reflects that Wallace did not raise either of these claims before the state courts.

It is well-established that a petitioner must exhaust his available state court remedies before proceeding to federal court for habeas relief. 28 U.S.C. §2254(b)(1)-(3); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). As the Supreme Court explained in <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971) (citations and quotations omitted):

The exhaustion-of-state remedies doctrine ... reflects a

> policy of federal-state comity, ... an accommodation of
> our federal system designed to give the State an initial
> opportunity to pass upon and correct alleged violations
> of its prisoners' federal rights.... We have
> consistently adhered to this federal policy, for it would
> be unseemly in our dual system of government for a
> federal district court to upset a state court conviction
> without an opportunity to the state courts to correct a
> constitutional violation.

Related to the exhaustion requirement is the doctrine of procedural default, another separate but distinct limit on the availability and scope of federal habeas review. See Nobles v. Johnson, 127 F.3d 409, 420-423 (5th Cir. 1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). "'A procedural default ... occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims would now find the claims procedurally barred.'" Bourq v. Prince, 2010 WL 1552723, *3 (E.D. La. March 19, 2010) (Chasez, MJ.), adopted, 2010 WL 1552728 (E.D. La. April 14, 2010) (Africk, J.) (quoting Nobles, 127 F.3d at 420 (additional quotation and citation omitted)).

As noted earlier, La.C.Cr.P. art. 930.8(A) provides that no application for post-conviction shall be considered by the state courts if it is filed more than two years after defendant's judgment of conviction and sentence have become final. Generally, this two-year filing requirement procedurally bars a petitioner from raising his unexhausted claims in state court.

28

There are two factual scenarios under which a petitioner is procedurally barred from seeking federal habeas corpus relief. One is where "a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ('traditional' procedural default)", and the other is where "the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ('technical' procedural default)." Papillion v. Cain, 2007 WL 3046063, *9 (W.D. La. Jul. 31, 2007), citing Bledsue v. Johnson, 188 F.3d 250, 254-255 (5th Cir. 1999), citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1986), and O'Sullivan v. Boerckel, 526 U.S. 838 (1999).  With respect to the above-described "'technical' procedural default", the court explained:

> A petitioner has "technically exhausted" his federal claim if he fails to properly and timely present his claim to the Louisiana courts and is time-barred from seeking relief in the Louisiana courts because he has allowed his state court remedies to lapse.  Magouirk v. Phillips, 144 F.3d 348 (5th Cir.1998), citing Coleman v. Thompson, 501 U.S. 722, 731-33, 111 S.Ct. 2546 (1986), and Sones v. Hargett, 61 F.3d 410, 416 (5th Cir.1995); Coleman, 111 S.Ct. 732, 735 n. 1; Bledsue, 188 F.3d at 254-55; Fuller v. Johnson, 158 F.3d 903, 905-06 (5th Cir.1998).  In such a case, ... there is no difference between non-exhaustion and procedural default.  Magouirk, 144 F.3d at 358.  Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically"

29

procedurally defaulted.   <u>Id</u>.

<u>Papillion</u>, 2007 WL at *9.

Clearly, Wallace has "technically" procedurally defaulted with regard to his claim that trial counsel was not present during critical proceedings and that appellate counsel erred in failing to raise his <u>Batson</u> claim.  To escape a dismissal of said claims based on his procedural default, Wallace must show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claims will result in a "fundamental miscarriage of justice."  <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1125 (1998), <u>citing</u> <u>Coleman</u>, 501 U.S. at 731-32; <u>Amos v. Scott</u>, 61 F.3d 333, 338-39 (5th Cir.), <u>cert</u>. <u>denied</u>, 516 U.S. 1005 (1995), <u>citing</u> <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989); <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982).  Wallace has failed to make such a showing; therefore, the instant claims are technically procedurally barred.

**D.  Destruction of DNA Evidence**

Wallace complains that officials destroyed the DNA evidence associated with the rape of J.L.[10]  For the following

_____

[10]In its response (rec. doc. 42, n. 16), the State questions the purpose of the "Procedural History" set forth by Wallace prior to the instant claim.  The State responds that "[t]o the extent [Wallace] may be attempting to present any substantive claim

reasons, the instant claim is without merit.

First, Wallace has failed to exhaust his state court remedies with respect to the instant claim because he failed to raise it before the state district court. <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 31-32, 124 S.Ct. 1347, 1350-1351, 158 L.Ed.2d 64 (2004) (To exhaust one's state court remedies, a petitioner must properly present each of his federal habeas claims to each reviewing state court.)

Second, Wallace's DNA-related claims do not warrant federal habeas relief.  It is well-established that a prisoner has no constitutional right to post-conviction DNA testing. <u>Richards v. District Attorney's Office</u>, 355 Fed. Appx. 826 (5th Cir.2009), <u>citing</u> <u>District Attorney's Office for Third Judicial Dist. v. Osborne</u>, 129 S.Ct. 2308, 2323 (2009); <u>Davis v. Cain</u>, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008) (Knowles, MJ.), <u>adopted</u> (Zainey, J.); <u>Johnson v. Cain</u>, 2011 WL 891040, at *5 (E.D. La. Feb. 11, 2011) (Moore, MJ), <u>adopted</u>, 2011 WL 915182 (E.D. La. March 14,

---

therein," the claims "would be procedurally defaulted due to lack of exhaustion."  There is, however, no need to engage in an exhaustion/procedural default analysis.  The Court, based upon its review of the pertinent portion of Wallace's amended petition (rec. doc. 29, pp. 27-32), finds that it is, as labeled, the procedural history associated with Wallace's efforts to have DNA tests performed.

2011) (Lemmon, J.).   Thus, Wallace suffered no violation of his
constitutional rights even if his DNA claims, i.e., that a portion
of the evidence suitable for DNA analysis was destroyed and/or that
the DNA testing was not properly performed, are correct.

### E.   Timeliness of <u>Batson</u> Claim Based Upon State's Successful Challenge of African-American Voir Dire Member

As noted above, Wallace's <u>Batson</u> claim, that the State
improperly struck an African-American during voir dire, was denied
on procedural grounds, specifically, pursuant to LSA-R.S. 930.8 and
LSA-R.S. 930.4.   <u>See</u> discussion <u>supra</u> at p. 6.

Generally, a federal court will not review a question of
federal law decided by a state court if the decision of that state
court rests on a state ground that is both independent of the
federal claim and adequate to support that judgment.   <u>Coleman v.
Thompson</u>, 501 U.S. 722, 731-32 (1991); <u>Glover v. Cain</u>, 128 F.3d
900, 902 (5th Cir. 1997); <u>Amos v. Scott</u>, 61 F.3d 333, 338 (5th Cir.
1995) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989)).   This
"independent and adequate state law" doctrine applies to both
substantive and procedural grounds and affects federal review of
claims that are raised on either direct or habeas review.   <u>Amos</u>, 61
F.3d at 338.

Procedural default does not bar federal court review of

a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover</u>, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. <u>Id</u>.

In the instant matter, the Louisiana Fifth Circuit was the last state court to issue a reasoned opinion, denying Wallace's

<u>Batson</u> claim pursuant to LSA-C.Cr.P. art. 930.8 and LSA-C.Cr.P. art. 930.4(C). Both Article 930.8 and 930.4(C) have been recognized as independent and adequate state rules that are regularly applied by the state courts. <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1125, 118 S.Ct. 1811 (1998) (Article 930.8) <u>Gilkers v. Cain</u>, 2006 WL 1985969 at *4 (E.D. La. May 30, 2006) (Duval, J.) (930.4(C)).

A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). The mere fact that a petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. <u>Id</u>. at 486.

With respect to his failure to file his <u>Batson</u> claim timely, Wallace argues that the claim was raised in a supplemental memorandum in support of his original, timely post-conviction application.  As it was merely a claim which he added to his timely petition, Wallace contends that it should be considered timely.  However, as noted above, the fact that Wallace, when he filed his original, timely post-conviction application, did not recognize the factual or legal basis for his <u>Batson</u> claim and, therefore, raised it not in his original petition, but in an untimely supplemental memorandum, does not constitute "cause" for the purpose of excusing his untimeliness.

With respect to his failure to raise his <u>Batson</u> claim on appeal, Wallace argues that he should be excused due to the trial court's failure to comply with  La.C.Cr.P.  art.  930.4(F).[11] However, as explained in <u>State ex rel. Rice v. State</u>, 749 So.2d 650 (La. 1999), and endorsed in <u>Gilkers v. Cain</u>, 2006 WL 1985969 at *2 (E.D. La. May 30, 2006) (Duval, J.),  the Uniform Application for Post Conviction relief, utilized by Wallace, requires that a prisoner filing an application for post-conviction relief explain why he failed to raise a particular claim earlier.  As such, the

---

[11]Article 430.4(F) provides, in pertinent part, that if a court considers dismissing a claim due to petitioner's failure to raise it on appeal, "the court shall order the petitioner to state reasons for his failure."

Uniform Application:

>     provides an inmate with an opportunity to explain his
>     failure to raise a claim earlier and provides the
>     district judge with enough information to undertake the
>     informed exercise of his discretion and to determine
>     whether default of an application under La.C.Cr.P. art.
>     930.4(B), art. 930.4(C), or art. 930.4(E) is appropriate.
>     Proper use of the Uniform Application thus satisfies the
>     requirements of La.C.Cr.P. art. 930.4(F) without the need
>     for further filings, formal proceedings, or a hearing.

Id.

Wallace also argues that his failure to raise his Batson claim on appeal is attributable to the ineffectiveness of his appellate counsel. As such, his violation of Article 930.4(C) should be excused.

As noted above, Wallace has procedurally defaulted his claim that counsel was ineffective in failing to raise his Batson claim. See discussion supra at pp. 27-30. In Edwards v. Carpenter, 529 U.S. 446, 450-452 (2000), the Supreme Court made clear that a procedurally defaulted ineffective assistance of counsel claim cannot serve as "cause" to excuse the procedural default of another habeas corpus claim unless the petitioner has satisfied the "cause and prejudice" standard with respect to the ineffective assistance of counsel claim itself. Wallace has failed to satisfy his burden in this regard. As such, Wallace has failed to show the requisite "cause" for his procedural defaulted Batson

36

claim.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir.1997) (citing Engle, 456 U.S. at 134 n. 43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Wallace has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir.1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, Wallace must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to

his guilt.   Campos v. Johnson, 958 F.Supp. 1180, 1195 (W.D. TX.1997) (footnote omitted); Nobles v. Johnson, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), cert. denied, 523 U.S. 1139 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").   When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F. 3d at 903.

Wallace does not present and the record does not contain evidence that suggests his actual innocence.   Accordingly, Wallace has failed to overcome the procedural bar to the instant claim.   As such, the claim is procedurally barred and must be dismissed with prejudice for that reason.

### F.  Violation of Right to Present Defense and Testify

Wallace argues that the trial court erred when it excluded his testimony that the victim had previously made false accusations of sexual abuse.   According to Wallace, the trial court's evidentiary error violated his right to present a defense and testify.

In order for the trial court's evidentiary decision to

38

run afoul of the Constitution, Wallace has the burden of showing that the trial court's ruling had a "substantial and injurious effect on his verdict." See Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993) (holding that the standard for determining whether federal habeas relief must be granted is whether the trial error "had substantial and injurious effect or influence in determining the jury's verdict").

Under state law, Wallace had the burden of showing that reasonable jurors could find, based upon the excluded testimony, that the victim had made prior false sexual abuse accusations. Wallace, 788 So.2d at 587.  The Louisiana Fifth Circuit Court of Appeal determined that Wallace had failed to satisfy his burden of proof, observing that Wallace presented no independent evidence supporting his claim, admitting that he was the "sole source of this information." Id.

Given the tenuous nature of the excluded testimony, the Court finds that its exclusion did not have a substantial and injurious effect or influence on the jury's verdict.  As such, the instant claim is without merit.

## G. Insufficient Evidence to Support Conviction

In addressing the instant claim on appeal, the Louisiana Fifth Circuit first set forth applicable Supreme Court law, along

with corresponding state law.

 The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560 (1979).

 "It is not the function of an appellate court to assess credibility or reweigh the evidence."  <u>State v. Rosiere</u>, 488 So.2d 965, 968 (La.1986).  It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and the appellate court will not second-guess the credibility determinations of the trier of fact beyond making sufficiency evaluations under the <u>Jackson</u> standard of review.  <u>State ex rel. Graffagnino v. King</u>, 436 So.2d 559, 563 (1983).  In the absence of internal contradiction or irreconcilable conflicts with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a conviction.  <u>State v. Stec</u>, 99-633, p. 3 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787.

<u>Wallace</u>, 788 So.2d at 584.

 Thereafter, the court examined the elements which must be established to support a forcible rape conviction.

 Louisiana's definition of rape includes the act of anal sexual intercourse with a male, when the act is committed without the person's lawful consent. La.R.S. 14:41(A).  "Emission is not necessary and any sexual penetration ..., however slight is sufficient to complete the crime." La.R.S. 14:41(B).  The crime of forcible rape occurs when the sexual intercourse is deemed to be without the victim's lawful consent "because it is committed when the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape." La.R.S. 14:42.1(A)(1).

Thus, the elements of forcible rape are (1) anal or vaginal sexual intercourse regardless of degree of penetration; (2) lack of consent of the victim; (3) a victim who was prevented from resisting by force or threat of physical violence; and (4) a victim who reasonably believed that resistance would not prevent the rape. <u>State v. Alberto</u>, 95-540 at p. 9 (La.App. 5 Cir. 11/28/95), 665 So.2d 614, 621-622, writ denied, 95-1677 (La.3/22/96), 669 So.2d 1222 and 96-0041 (La.3/29/96), 670 So.2d 1237.

<u>Id.</u>

Finally, the Louisiana Fifth Circuit reasoned:

In this case the testimony of the victim and that of the defendant were in direct conflict.  The jury, when faced with the conflict, apparently chose to believe the victim and the physician's explanation for the lack of physical evidence.  This is a credibility determination. It is not the function of the appellate court to evaluate the credibility of witnesses, nor to overturn the trial court on its factual determination of guilt.

<u>Id.</u>

This Court finds that the above reasoning on the part of the Louisiana Fifth Circuit Court of Appeal does not represent an unreasonable application of Supreme Court law, specifically, <u>Jackson</u>, <u>supra</u>, to the facts of this case.  Accordingly;

## **RECOMMENDATION**

It is hereby recommended that the application for federal habeas corpus relief of Marvin Maurice Wallace be dismissed with prejudice.

41

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this __23rd__ day of _____May_____, 2013.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

42